IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TYLER SETH DUSTIN PAYNE, | ) | Case No. 1:18-cv-302 |
|  | ) |  |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
|  | ) |  |
| v. | ) | MAGISTRATE JUDGE |
|  | ) | THOMAS M. PARKER |
| BRIGHAM SLOAN, WARDEN, | ) |  |
|  | ) |  |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
|  | ) |  |

Petitioner, Tyler Seth Dustin Payne, an Ohio prisoner serving an eight-year prison term[1]

after he was convicted of illegal manufacture of drugs, seeks a writ of habeas corpus under 28

U.S.C. § 2254.  Payne claims that his convictions and sentence in *State v. Payne*, Ashtabula Cty.

Ct. Comm. Pl. Case No. 2013-CR-0025, violated his federal constitutional rights.  ECF Doc. 1.

Respondent, Warden Brigham Sloan[2], filed a return of writ on July 2, 2018.  ECF Doc. 12.  And

Payne filed a traverse on December 10, 2018.  ECF Doc. 21-1.  This matter is before me by an

automatic order of reference under Local Rule 72.2 for preparation of a report and

recommendation on Payne's petition.[3]  Because all of Payne's claims are procedurally defaulted

and/or meritless, I recommend that all of Payne's claims be DISMISSED and that his petition for

---

[1] Payne's prison term expires on December 27, 2020.  *See* https://appgateway.drc.ohio.gov/
OffenderSearch/Search/Details/A651250 (last visited Aug. 28, 2020).

[2] Brigham Sloan is warden of Lake Erie Correctional Institution, where Payne was housed when he filed
his application.  As of September 27, 2019, Payne was housed at Grafton Correctional Institution, and
Keith Foley is warden of that institution.  ECF Doc. 31; https://www.drc.ohio.gov/gci (last visited Nov. 13,
2020).

[3] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for
administrative track cases reflecting the automatic order of reference.  ECF Doc. 3.

writ of habeas corpus be DENIED.  I further recommend that Payne not be granted a certificate of appealability.

I.      **State Court History**

      A.      **State Trial Court, Case No. 2013-CR-0025**

On February 27, 2013, an Ashtabula County grand jury indicted Payne on: one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of Ohio Rev. Code § 2925.041(A)(C)(2); one count of illegal manufacture of drugs in violation of Ohio Rev. Code § 2925.04(A), (C)(3)(b); and one count of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(1).  ECF Doc. 12-1 at 7-8.  Specifically, the indictment alleged that "on or about" December 8, 2012, Payne had possessed pseudoephedrine and lithium batteries for manufacturing methamphetamine, had manufactured methamphetamine, and had done both within the vicinity of a school.  ECF Doc. 12-1 at 7-8.  Further, the indictment alleged that Payne caused a fire in a public housing complex while manufacturing methamphetamine.  ECF Doc. 12-1 at 8.  Payne's four-day trial began on November 12, 2013 and ran through November 15, 2013.  ECF Doc. 12-2 at 1-485.

During Payne's trial, the prosecution called several witnesses, including: (1) Susan Massaro; (2) Larry DeGeorge; (3) Richard Loveridge; (4) Chief Ronald Pristera; (5) Lieutenant John Paul; (6) Jennifer Acurio; and (7) Detective William Felt.  ECF Doc. 12-2 at 103-16, 119-42, 149-68, 172, 175-86, 189-91, 209-17, 219-20, 225-66, 272-96.  Payne's court appointed counsel cross-examined each witness (except Massaro, for whom counsel had no questions).  ECF Doc. 12-2 at 109, 116-19, 142-49, 160-72, 186-89, 217-19, 298-302, 312-16.  But during counsel's cross examination of Detective Felt, Payne declared that he could "no longer continue with this defense counsel."  ECF Doc. 12-2 at 316.  After a brief sidebar conversation, the court

dismissed the jury from the courtroom and conducted an extensive waiver-of-counsel colloquy. ECF Doc. 12-2 at 317.  During that colloquy, Payne simply said that he wanted counsel to do "stuff" that counsel did not do.  ECF Doc. 12-2 at 321.  The court explained that it was too late to ask for new appointed counsel because the trial was well-underway, and that Payne would need to represent himself if he wished to proceed without counsel that the court had appointed.  ECF Doc. 12-2 at 317-20, 329-30, 331-34.  Nevertheless, the court gave Payne time to try to retain his own counsel after Payne said that he could obtain funds.  ECF Doc. 12-2 at 319, 322, 325, 327. Payne was unsuccessful.  ECF Doc. 12-2 at 328.  The court prepared a waiver-of-counsel form, explained the right to counsel, and explained the maximum and minimum penalties for the charges he faced.  ECF Doc. 12-2 at 318-19, 323-27.  Ultimately, Payne chose to proceed without appointed counsel, signed the waiver-of-counsel form, and proceeded to represent himself.  ECF Doc. 12-2 at 321-22, 329-34.  Counsel stayed on standby.  ECF Doc. 12-2 at 334-35.  Payne continued with the cross-examination of Detective Felt, after which the state rested its case.  ECF Doc. 12-2 at 378.

The court told Payne that he could consult with standby counsel before presenting his case, explained that Payne could choose whether or not to present evidence in his defense, and explained that Payne had the right to testify or not testify without his decision not to testify being used against him.  ECF Doc. 12-2 at 396-97.  The court asked if Payne wished to present evidence, and Payne said "No, sir.  Nothing that I can think of."  ECF Doc. 12-2 at 407.  The court warned Payne that, if he did not testify, he would not be able to use closing arguments to bring in testimony that he had not presented and asked Payne to consult with standby counsel before making his decision.  ECF Doc. 12-2 at 407-10.  After consulting with standby counsel, Payne indicated that he did not want to testify and asked the court to re-appoint standby counsel

3

to represent him during closing arguments.  ECF Doc. 12-2 at 410, 413-14.  The trial court

granted Payne's request to re-appoint counsel over the state's objection.  ECF Doc. 12-2 at 410-

13.

On November 15, 2013, the jury returned a unanimous verdict finding Payne guilty of all

counts.  ECF Doc. 12-2 at 480.  The court accepted the jury's verdict, ordered that a pre-sentence

investigation be conducted, and scheduled sentencing for December 19, 2013.  ECF Doc. 12-2 at

480-81; *see also* ECF Doc. 12-1 at 12.  At sentencing, the court determined that the offenses

were allied and merged them.  ECF Doc. 12-3 at 4-15; *see also* ECF Doc. 12-1 at 14.  The state

elected to proceed with sentencing on the aggravated arson count.  ECF Doc. 12-3 at 8; ECF

Doc. 12-1 at 14.  The court sentenced Payne to a prison term of 10 years, to be followed by five

years' post-release control, on the aggravated arson conviction.  ECF Doc. 12-3 at 16; ECF Doc.

12-1 at 15.

### B.    Direct Appeal, Case No. 2013-A-0001

On January 3, 2014, Payne appealed to the Ohio Court of Appeals.  ECF Doc. 12-1 at 17.

The court of appeals appointed Payne new counsel on appeal.  ECF Doc. 12-1 at 28.  Payne filed

a *pro se* motion to substitute appellate counsel and a *pro se* "motion to modify, correct, and

supplement" the record on appeal.  ECF Doc. 12-1 at 29-34.  Payne's motion to modify stated

that he "believe[d] there to be omissions, misstatements, and errors through-out the record that

are material to this party in this appeal to this respected court," but he did not specify what the

errors were.  ECF Doc. 12-1 at 34.  The Ohio Court of Appeals denied both motions, noting that

his *pro se* motion to modify the record was improperly filed because he was represented by

counsel.  ECF Doc. 12-2 at 42.

4

Payne's merits brief on appeal raised two assignments of error:

1.     The jury's verdict is against the manifest weight of the evidence and the sufficiency of the evidence.

2.     The trial court erred when it failed to address appellant's concerns about his appointed counsel's performance and found that appellant had made an effective waiver of counsel.

ECF Doc. 12-1 at 44-57.  In his second assignment of error, Payne specifically argued that the trial court had erred by failing to: (1) conduct an inquiry into Payne's allegations of deficient performance as required under *State v. Deal*, 17 Ohio St. 2d 17 (Ohio 1969); and (2) ensure that his waiver of counsel was knowing, intelligent and voluntary when the court did not review the facts of the case, did not discuss possible defenses, and told Payne that he had to proceed with already-appointed counsel or represent himself. ECF Doc. 12-1 at 56-57.

The Ohio Court of Appeals reversed and remanded the judgment on September 30, 2014. ECF Doc. 12-1 at 93-107.  The court held that the state presented insufficient evidence to support Payne's aggravated arson conviction but declined to address the other counts because the absence of a sentence resulted in no final, appealable conviction on those counts.  ECF Doc. 12-1 at 106-07.  The court also rejected Payne's second assignment of error, holding that the trial court had: (1) adequately addressed Payne's generalized complaints regarding counsel; and (2) ensured that Payne knowingly, intelligently, and voluntarily waived his right to counsel and elected to proceed *pro se*.  ECF Doc. 12-1 at 106-07.

### C.     Resentencing on Remand, Case No. 2013-CR-0025

Payne's originally appointed trial counsel represented him at resentencing.  ECF Doc. 12-1 at 146, 154, 181; ECF Doc. 12-4.  On June 10, 2015, Payne, through counsel, filed a motion to dismiss the remaining counts "to prevent the violation of [Payne's] constitutional rights to due process and against double jeopardy." ECF Doc. 12-1 at 146-52 (motion), 154-60

5

(amended motion).  On June 24, 2015, Payne filed a *pro se* "motion for a stay of execution of sentence and for bail pending appeal."[4]  ECF Doc. 12-1 at 165-73.

The trial court conducted a resentencing hearing on June 25, 2015.  ECF Doc. 12-4.  The court first heard oral arguments on Payne's motion to dismiss and denied the motion based on the Ohio Court of Appeals instructions on remand.  ECF Doc. 12-4 at 13.  The state elected to proceed with sentencing on the illegal-manufacture count.  ECF Doc. 12-4 at 14-15.  The court sentenced Payne to an 8-year prison term and overruled Payne's motion to stay.  ECF Doc. 12-4 at 29, 34.

At the hearing, Payne also brought up his claim that the trial transcript did not accurately reflect what had been said at trial, and the trial court directed Payne to file a motion with the court to address the issue in the first instance.  ECF Doc. 12-4 at 24, 27, 34-36.  Payne filed a *pro se* "motion to modify, correct, and supplement" the record, which stated:

> Specifically, Page 379 para 5 the Defendant asked the trial court "will you bring back Richard Loveridge so I can cross-examine him?"  This as well as many other statements were omitted from the transcript.  The audio/video recording needs to be re-transcribed to accurately contain what actually occurred. The Defendant's counsel refuses to help the Defendant compile an accurate transcript of proceedings.

ECF Doc. 12-1 at 163.  On September 2, 2015, the trial court determined that there were no material omissions from the record or misstatements in the trial transcript and denied Payne's motion.  ECF Doc. 12-1 at 186.  The court explained:

> The motion identifies one specific omission, i.e., that the defendant asked the Court, "Will you bring back Richard Loveridge so I can cross-examine him?" Richard Loveridge did testify at the trial, on the State's case in chief, and was subject to cross-examination.
>
> The Court caused a review of substantial parts of the original digital audio/video recording, particularly after the point during the trial when Mr. Payne discharged

---

[4] At the June 25, 2015, hearing the court noted that the motion to stay had not been docketed, and Payne gave the court a copy of the motion.  *See* ECF Doc. 12-4 at 22.

his [appointed counsel]. There was also follow-up with the court reporter who transcribed the proceedings regarding the accuracy and completeness of the written transcript.  Regarding the defendants' specific page reference to the transcript, the only thing that appears to be omitted is a comment made by the Court, while dismissing the jurors for lunch, regarding the temperature in the courtroom and the jury room.  At a certain point after the State rested, the Court asked the defendant directly if he wished to present evidence.  He stated that he did not.  At a later point, prior to closing arguments, the Court confirmed with [appointed counsel] that the defense would not offer any evidence.  * * * The Court has been unable to locate any indication in the audio/video recording of the record, that anything substantive or of evidentiary relevance to the case was omitted from the written transcript.  The court cannot find any indication, either specifically, that the defendant requested to recall the witness, Richard Loveridge, or generally, that the defendant made any other request to present evidence, or any other objection that was not included in the transcript.

ECF Doc. 12-1 at 185-86.

### D. Direct Appeal from Resentencing, Case No. 2015-A-0036

On July 22, 2015, Payne, through new appellate counsel, filed a notice of appeal to the

Ohio Court of Appeals.  ECF Doc. 12-1 at 187.  Payne's appellate brief raised two assignments

of error:

1.  The trial court erred to the prejudice of the defendant's Rule 29 motion for acquittal; furthermore the Jury's verdict was against the manifest weight of the evidence.

2.  The trial court erred when it failed to address appellant's concerns about his appointed counsel's performance and found that appellant had made an effective waiver of counsel, in the middle of the trial when the jury was already impaneled and sworn and had heard a substantial amount of evidence.

ECF Doc. 12-1 at 196-97, 201-08.  Specifically, Payne's first assignment of error argued that the

evidence adduced at trial was insufficient to support his illegal-manufacture conviction.  ECF

Doc. 12-1 at 202-03.  Payne's second assignment of error generally presented the same argument

that he had raised in his first direct appeal.  ECF Doc. 12-1 at 205-08.  Payne also filed a *pro se*

"statement of evidence and motion to modify, correct, and supplement" the record.  ECF

Doc. 12-1 at 211-15.  The Ohio Court of Appeals denied the motion, stating that Payne was

represented by counsel and required to make all filings through counsel.  ECF Doc. 12-1 at 219.

On March 28, 2016, the Ohio Court of Appeals affirmed Payne's conviction and

sentence.  ECF Doc. 12-1 at 238-47.  The Ohio Court of Appeals concluded that the evidence

adduced at trial – including testimony from Detective Felt, Chief Pristera, and Loveridge –

supported the conclusion that methamphetamine was made in the apartment and that Payne "was

party to or complicit in the manufacture of methamphetamine in the apartment."  ECF Doc. 12-1

at 8-9.  Thus, the Court held that Payne's conviction was supported by sufficient evidence as

well as the weight of evidence.  ECF Doc. 12-1 at 246.  The Ohio Court of Appeals also stated

that "[b]ecause this court previously addressed and ruled on [Payne's] argument, his second

assignment of error lacks merit."  ECF Doc. 12-1 at 247.  Payne later filed a *pro se* motion for

reconsideration, which the Ohio Court of Appeals denied.  ECF Doc. 12-1 at 248, 263.

### E.  Appeal to the Ohio Supreme Court, Case No. 2016-0681

On May 2, 2016, Payne appealed to the Ohio Supreme Court.  ECF Doc. 12-1 at 264.  In

his memorandum in support of jurisdiction, Payne raised four propositions of law:

Proposition of Law No. 1:
Appellate counsel was constitutionally ineffective for failing to argue that, the court of
appeals erred to the prejudice the appellant and violated the Appellant's due process and
double jeopardy rights, and the separation of powers clause doctrine, of the United States
and Ohio constitutions when it rendered its opinion in Appellant's prior appeal, ordering
a remand for resentencing on one of the previously merged allied offenses.  Where, doing
so ignored the plain unambiguous language of R.C. 2941.25(A), and in effect
impermissibly added language to R.C. 2941.25(A) Ohio's merger statute and the
legislative summary it was based upon.

Proposition of Law No. 2:
Appellate counsel was constitutionally ineffective for failing to argue that, the trial court
erred to the prejudice of the Appellant and violated his due process and double jeopardy
rights guaranteed to him by the constitution of the United States and the Constitution of
the State of Ohio, when the trial court overruled Appellant's 'motion to dismiss' the
previously merged offenses and allowed the state to elect another offense "it wished to

pursue" against the Appellant and then proceeded to resentence the Appellant to enter a successive judgment of conviction on one of the previously merged offenses.

Proposition of Law No. 3:
The trial court erred to the prejudice of the Appellant, and Appellant's federal and state constitutional rights to due process and a fair trial, were violated when the trial court failed to grant Appellant's Criminal Rule 29 motion for acquittal.

Proposition of Law No. 4:
The trial court erred to the prejudice of the Appellant and violated his rights to the effective assistance of counsel, due process of law, and ultimately a fair trial when it failed to inquire into Appellant's complaint about the effectiveness of counsel and compelled the Appellant to make an involuntary waiver of counsel.

ECF Doc. 12-1 at 267-68, 274-83. On June 29, 2016, the Ohio Supreme Court declined jurisdiction over Payne's case. ECF Doc. 12-2 at 299.

## F.    App. R. 26(B) Application to Reopen Direct Appeal

On June 6, 2016, while his appeal was pending before the Ohio Supreme Court, Payne filed an Ohio App. R. 26(B) application to reopen his appeal. ECF Doc. 12-1 at 300 (original application), 352 (amended application). Payne asserted that his second appellate counsel was constitutionally ineffective for "fail[ing] to argue multiple state and federal constitutional violations that occurred during the Appellant's trial and resentencing proceedings," presenting an issue that was already expressly rejected in his first appeal, and failing to assist in filing an App. R. 9(C) statement of evidence to correct the trial transcripts. ECF Doc. 12-1 at 353; *see also* ECF Doc. 12-1 at 300. Payne indicated that, in a re-opened appeal, he wanted to present the following issues:

1.  The court of appeals erred to the prejudice of the appellant and violated the appellant's due process, double jeopardy, and speedy trial rights and the separation of powers doctrine of the United States Constitution and the constitution of the State of Ohio, when it rendered the opinion in appellant's prior appeal, ordering a remand for resentencing on one of the previously merged allied offenses, where, doing so ignored the plain unambiguous language of R.C. 2941.25(A), and doing so, in effect, impermissibly added language to R.C. 2941.25(A) Ohio's merger statue and the legislative

summary it was based upon and culminated in a violation of the appellant's due process, double jeopardy, and speedy trial rights.

2. The trial court erred to the prejudice of the appellant and violated his due process, double jeopardy, and speedy trial rights guaranteed to him by the fifth, sixth, and fourteenth amendments of Constitution of the United States and Article I, Section 10 of the constitution of the State of Ohio, and violated both of the "vitally important interests" protected by the double jeopardy clause as announced by the United States Supreme Court in *Yeager v. U.S.*, when the trial court overruled the appellant's 'motion to dismiss' the previously merged offenses and allowed the state to elect another offense "it wished to pursue" against the appellant and then proceeded to resentence the appellant and enter a successive judgment of conviction on one of the previously merged offenses.

3. The trial court committed prejudicial error and violated Appellant's rights to Due Process, Confrontation, Compulsory Process, to present a defense, and a fair trial under the 14th and 6th Amendments to the Constitution of the United States and Article I, Section 10, of the Constitution of Ohio, by denying the Appellants request to Cross-Examine Richard Loveridge.

4. The trial court committed prejudicial error and violated Appellant's rights to Due Process, Confrontation, Compulsory Process, to present a defense, and a fair trial under the 14th and 6th Amendments to the Constitution of the United States and Article I, Section 10, of the Constitution of Ohio, by failing to fully address the Appellant's request about "bringing back witnesses who had already been allowed to leave" so he could cross-examine them.

5. The trial court erred and violated the Appellant's rights to Due Process, the Effective Assistance of Counsel, Confrontation, Compulsory Process, to present a defense, and ultimately a fair trial guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, Section 10 and Article I, Section 16 of the Constitution of the State of Ohio, when it failed to address the Appellant's inquiry about "bringing back witnesses", implied that any request would be denied, and compelled the Appellant into an involuntary, unknowing, unintelligent, and equivocal 'waiver of counsel'.

6. The trial court erred and violated the Appellant's rights to Due Process of Law, the 'Effective Assistance of Counsel', Confrontation, to present a defense, and to a fair trial guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 and Article I, Section 16 of the Constitution of the State of Ohio, when it failed to inquire into the 'complete breakdown in communication' and the 'irreconcilable conflict' that had developed between the Appellant and his appointed Trial Counsel and forced the Appellant into an Untimely, Involuntary, Unknowing, Unintelligent, and Equivocal 'Waiver of Counsel'.

7. The trial court erred to the prejudice of the Appellant and violated the Appellant's rights to Due Process of Law, the 'Effective Assistance of Counsel', Confrontation, to present a defense, and to a fair trial guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 and Article I, Section 16 of the Constitution of the State of Ohio, when it failed to inquire into the 'complete breakdown in communication' and the 'irreconcilable conflict' that had developed between the Appellant and his appointed Trial Counsel and failed to make a record for effective appellate review.

8. The Appellant's rights to Due Process of Law guaranteed by the 14th Amendment to the United States Constitution was violated when the trial court convicted and sentenced the Appellant for an offense that is premised upon insufficient evidence as a matter of law under *Jackson v. Virginia*.

9. The Appellant's trial counsel was constitutionally ineffective [*sic*] in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio, when trial counsel repeatedly and continuously failed to object to Detective Felt's 'impermissible opinion testimony' that the male in the drug mart video was the appellant, the female was the Appellant's mother, and the two were at the store together; when trial counsel failed to object to the prosecutor calling Vernotta Jimenez to the stand knowing she was going to assert her 5th Amendment rights; when trial counsel failed to object when the trial court refused to give the .jury the requested portions of the trial transcript; when counsel failed to object and ensure that there was a record made about the 'complete breakdown in communication' and 'irreconcilable defferences' [*sic*] that had developed between the appellant and trial counsel; when trial counsel failed to ensure that the 'waiver of counsel' was truly being made knowingly, intelligently, and voluntarily; and when trial counsel failed to assist the appellant in preparing and filing a motion for a new trial and/or a petition for post-conviction relief.

ECF Doc. 12-1 at 354-61. Payne also filed a "motion for leave to file a 'statement of evidence'" and a "statement of evidence," reiterating the statements he made in the "motion to modify, correct, and supplement" the record that he had filed in the district court. ECF Doc. 12-1 at 326-31.

The Ohio Court of Appeals denied Payne's "motion for leave to file a 'statement of evidence'" because Payne did not contest the availability of trial transcripts and did not file his

11

'statement of evidence' before the record was transmitted to the Ohio Court of Appeals, as required under Ohio App. R. 9(C). ECF Doc. 12-1 at 373-74. The court also denied Payne's application to reopen his direct appeal because his second appellate counsel was not ineffective for failing to raise any of Payne's proposed assignments of error. ECF Doc. 12-1 at 374-80. The court explained that: (1) Payne's first and second assignments of error (challenging the appellate court's decision to remand the case for resentencing after his first direct appeal and the trial court's decision to follow the appellate court's instructions, respectively) were *res judicata* barred because they could have been – but were not – raised in an application for reconsideration after the court of appeals issued its ruling on the original direct appeal or in his jurisdictional memorandum to the Ohio Supreme Court during Payne's first direct appeal, but were not; (2) Payne's second assignment of error was meritless even if not *res judicata* barred because the court correctly resentenced Payne on one of the previously-merged offenses; (3) Payne's third assignment of error (challenging the court's denial of his purported request to recall Loveridge) was unsubstantiated because the record did not show that Payne had asked the court to recall Loveridge and meritless because Payne's confrontation rights were satisfied when trial counsel had effectively cross-examined Loveridge; (4) Payne's fourth assignment of error (challenging the denial of his request to "bring[] back witnesses who had already been allowed to leave") was meritless because Payne's request was not specific enough for the court to determine which unnamed witness Payne sought to question, and trial counsel had already cross-examined each witness before Payne decided to proceed *pro se*; (5) Payne's fifth, sixth, and seventh assignments of error (each challenging his waiver of counsel) were *res judicata* barred because the court of appeals had determined during his first direct appeal that the trial court adequately ensured that he knowingly, intelligently, and voluntarily waived his right to counsel; (6) second appellate

12

counsel had actually raised Payne's eighth assignment of error (challenging whether sufficient evidence supported his conviction); and (7) the "omnibus argumentation" in Payne's ninth assignment of error (challenging whether trial counsel's representation was constitutionally ineffective) was not specific enough to allege how counsel's performance was deficient and did not indicate how any of the purported deficiencies prejudiced him.  ECF Doc. 12-1 at 374-80.

## G.    Second Appeal to the Ohio Supreme Court, Case No. 2016-1771

On December 1, 2016, Payne appealed the denial of his App. R. 26(B) application to the Ohio Supreme Court.  ECF Doc. 12-1 at 381.  Payne's memorandum in support of jurisdiction raised the following propositions of law:

> Proposition of Law No. 1:
> Appellate counsel was constitutionally ineffective for failing to argue that the trial court erred to the prejudice of the Appellant and violated his due process, double jeopardy, and speedy trial rights guaranteed by the Constitution of the United States and the constitution of the State of Ohio and violated both of the "vitally important interests" protected by the Double Jeopardy Clause when the trial court overruled the Appellant's 'motion to dismiss' the previously merged offenses and allowed the state to elect another offense "it wished to pursue" against the Appellant and then proceeded to resentence the Appellant and enter a successive judgment of conviction.  The current interpretation and application of R.C. 2941.25(A) to the present case is contrary to the plain unambiguous language of the statute and violates the separation of powers doctrine of the U.S. and Ohio constitution[s].

> Proposition of Law No. 2:
> When there is an error or omission made during the recording, preparation, and filing of the trial transcripts, a 'statement of evidence' filed under App. R. 9(C) is the only vehicle by which an appellant can correct the error, and appellate counsel provides ineffective assistance in failing to assist appellant in preparing and filing said motion.

> Proposition of Law No. 3:
> Appellate counsel was constitutionally ineffective in failing to argue that appellant's rights to due process, confrontation, compulsory process, to present a defense, and a fair trial under the United States and Ohio constitution[s] were violated when the trial court denied the Appellant['s] request to cross-examine Richard Loveridge and when the trial court denied the Appellant['s] request to "bring back witnesses" so Appellant could cross examine them.

Proposition of Law No. 4:
Appellate counsel was ineffective for failing to argue that trial counsel was ineffective in
violation of the 6th Amendment to the United States Constitution.

ECF Doc. 12-1 at 384-85, 389-400.  On February 22, 2017, the Ohio Supreme Court declined

jurisdiction over Payne's appeal.  ECF Doc. 12-1 at 410.

## II.      Federal Habeas Petition

On February 2, 2018, Payne, acting *pro se*, filed a petition for writ of habeas corpus.

ECF Doc. 1.  Payne's petition raises five claims for relief:

**Ground One**: Petitioner's rights under the Fifth and Fourteenth Amendments of
the U.S. Constitution were violated when the trial court overruled Petitioner's
'Motion to Dismiss' on due process and double jeopardy grounds and proceeded
to resentence Petitioner.

**Ground Two**: Petitioner's waiver of counsel was unknowing, unintelligent, and
involuntary in violation of Petitioner's rights to due process of law, the effective
assistance of counsel, and a fair trial guaranteed under the sixth and fourteenth
amendments of the U.S. Constitution.

**Ground Three**: Petitioner's rights to due process of law, confrontation,
compulsory process, to present a defense, and to fair trial guaranteed under the
fifth, sixth, and fourteenth Amendments of the U.S. Constitution were violated
when the trial court failed to address Petitioner's request to bring back witnesses
and when the court denied Petitioner's request to bring back Richard Loveridge
– a key prosecution witness – so Petitioner could cross-examine him.

**Ground Four**: Appellate counsel provided ineffective assistance in violation of
the sixth and fourteenth Amendments to the U.S. Constitution when counsel
failed to raise numerous meritorious issues in Petitioner's direct appeal.

**Ground Five**: Petitioner was denied the effective assistance of Appellate counsel
on direct appeal as guaranteed by the sixth and fourteenth Amendments to the
United States Constitution when appellate counsel failed to assist Petitioner with
getting the record corrected before the appeal was heard.

ECF Doc. 1 at 5-6, 8-14.

### III.    Facts

Analysis of Payne's petition begins with the facts recited in the Ohio Court of Appeals' opinions.  These factual findings are presumed correct unless Payne rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  In its March 28, 2016 decision, the Ohio Court of Appeals made the following fact findings relevant to Payne's petition:

> {¶34} Near the end of the prosecution's case-in-chief, appellant interrupted his Attorney's cross-examination of Detective Felt and expressed his desire to remove his attorney as counsel.  He specifically stated that, although his lawyer was a good attorney, he did not agree with the strategy counsel had adopted to defend him.  Judge Yost responded:
>
>> {¶35} [Y]ou have a right to be represented by a lawyer throughout every stage of these proceedings, regardless of the evidence and regardless of whether you're not guilty or guilty.  And where you cannot afford to hire a lawyer you have a right to have one appointed by the Court.  You have had a lawyer appointed by the Court to represent you in this case.  This is [Appointed Counsel], and I guess we are almost finished with the State's side of the case at this point in time, with representing you.  But if you cannot afford to hire a lawyer, then you're in a situation where you're going to have to allow [Appointed Counsel to continue with the representation, unless you're sure that you want to discharge him from any representation.  But if that happens, the only other choice you have is to go forward and represent yourself.
>
> {¶36} Appellant asked the court how long he would be given to retain a different attorney.  The court explained because trial had commenced and appellant had already accepted court-appointed representation, he must either retain current counsel or go forward representing himself.  The court urged appellant to allow appellant's current counsel to proceed due to the potential difficulties he might encounter managing the procedural technicalities of the litigation.  The judge, however, emphasized, that the decision was appellant's to make.  After further explaining the ramifications of self-representation, and giving appellant the opportunity to use a phone to try and enlist a new attorney, which he was unable to do, appellant concluded he would proceed pro se for the remainder of the trial.  The court nevertheless determined appellant's former counsel should remain at the defense table to answer any potential questions appellant might have relating to trial matters and the like.  The dialogue between the court and appellant, as well as appellant's vehemence in moving forward without counsel that was

already appointed, demonstrates his decision to waive counsel was knowing, voluntary, and intelligent.

\* \* \*

{¶39} In this case, appellant did not request that new counsel be appointed. Moreover, appellant's decision to remove his defense attorney occurred during cross-examination of the state's final witness.  In effect, therefore, it would be difficult to conclude, even if appellant had requested new counsel, that the request would be timely.

{¶40} Finally, appellant failed to clearly specify the exact nature of the problem he had with his appointed counsel.  \* \* \*

{¶41} In this case, appellant merely asserted a general objection to his defense counsel's strategy in defending him. In seeking to remove his attorney, he observed "I need someone who's gonna fight for me and prove my innocence. [Not] [s]omeone Who's gonna lead the State's case against me."  Appellant explained he had "asked [counsel] to do stuff multiple times and he wouldn't do it.  Stuff that I believe is in my defense and would prove my innocence, and I can't continue with him."  Although appellant had the opportunity to expand on the actual features of counsel's representation to which he objected, i.e., the "stuff," he did not do so. And, ultimately, after the court, over the course of several exchanges, underscored appellant had the right to proceed on his own, appellant chose to represent himself.  Given the generality of appellant's complaint, we hold the court adequately explored any issues appellant had with counsel.

{¶42} Under the circumstances, the record shows the trial court ensured appellant knowingly, intelligently, and voluntarily elected to proceed pro se.  Moreover, appellant's vague objections to trial counsel's strategy were insufficient to trigger any further inquiry by the judge.  After reiterating his general dissatisfaction with counsel's approach to his defense, appellant ultimately chose to go forward on his own.  We find no error in the manner in which the court managed this issue.

ECF Doc. 12-1 at 103-07.

In its October 19, 2016 decision overruling Payne's motion for leave to file a App.

R. 9(C) statement of evidence and application to reopen his direct appeal under App. R. 26(B),

the Ohio Court of Appeals made the following fact findings relevant to Payne's petition:

Appellant appears to assert this court erred in remanding the matter in his first direct appeal because the remaining crimes of which he was found guilty were previously merged and the state could not elect to proceed to resentencing on the

illegal manufacture of drugs count. Appellant could have raised this argument on reconsideration of his original direct appeal, . . . or attempted to raise the issue in a jurisdictional memorandum with the Ohio Supreme Court. He did not do so and, as a result, the issue is res judicata. Counsel did not render deficient performance for not raising appellant's argument under his first proposed assignment of error.

* * *

Appellant maintains the trial court erred when it denied his motion to dismiss. Specifically, he contends the court's previous merger of two charges (illegal assembly or possession of chemicals for the manufacture of drugs and illegal manufacture of drugs) with the aggravated arson charge, which was found to be based upon insufficient evidence, legally negated the state's ability to elect as well as the trial court's ability to enter a judgment of conviction on an elected charge. . . .

The instant argument could have been raised in an application for reconsideration of our opinion in *Payne I* or appellant could have sought jurisdictional review from the Ohio Supreme Court. He did neither and, as a result, res judicata bars the instant challenge. Even if res judicata did not bar this challenge, this court thoroughly addressed the issue in *Payne I*. In *Payne I*, this court observed:

> The state's election to proceed to sentencing on the aggravated arson count did not eliminate the jury's verdicts of guilty on the remaining counts of illegal manufacture of drugs or illegal assembly and possession of chemicals for the manufacture of drugs. In *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, the Supreme Court of Ohio was asked to determine, inter alia, what R.C. 2941.25(A), Ohio's merger statute, prohibits. In response to this question, the Court observed the statute precludes a defendant only from being punished for allied offenses. *Whitfield*, at ¶27. It does not, however, eliminate a jury's guilty verdict(s) on any remaining counts that were the subject of the merger process. The Court stated "the determination of a defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing." *Id.* It therefore follows that when a disputed conviction is premised upon insufficient evidence and is subsequently vacated, the reversal of that conviction does not function to vacate or eliminate a jury's verdict for crimes the defendant was found guilty, but of which a defendant was not convicted due to the merger exercise.

We maintain the foregoing analysis and conclusion represents an accurate interpretation of both *Whitfield* and R.C. 2941 .25(A). It therefore represents the "law of the case" and, as a result, counsel was not ineffective for failing to assert appellant's second proposed assignment of error.

* * *

Appellant asserts that the trial court summarily denied him the opportunity to re-call witness Richard Loveridge for purposes of additional cross-examination. * * * Preliminarily, appellant notes he made the request to re-call Loveridge immediately after his cross-examination of Detective Felt. He cites to "T.p. 379 of the modified, corrected, and supplemented transcript" to support his allegation that he was denied the opportunity to re-call Loveridge.  The transcript of proceedings in the appellate court file, however, fails to disclose any such request.  After cross-examination of Detective Felt, appellant rested.  In this respect, appellant has failed to adequately substantiate his allegation.  Even if the appellate record disclosed such a denial, however, appellant has failed to establish a violation of his right to confrontation.  Prior to removing his trial counsel, his attorney effectively cross-examined Loveridge.  Although appellant did not cross-examine Loveridge pro se, he, through counsel, was given the opportunity to confront this witness.  Appellate counsel was not ineffective for failing to raise this issue.

* * *

Appellant contends his constitutional rights were violated because the trial court refused to re-call witnesses (none of whom appellant names) who had previously testified and were subject to cross-examination. * * * First, appellant has failed to identify how he was prejudiced by the court's decision.  He does not assert how additional cross-examination of the unnamed witnesses would have assisted his defense and failed to proffer what he expected the witnesses might divulge were he given the opportunity to cross-examine them pro se.  Each witness was cross-examined by defense counsel before appellant determined he wished to proceed pro se.  We discern no error in the trial court's decision and therefore appellate counsel was not ineffective for failing to raise this issue

ECF Doc. 12-1 at 374-80.

## IV.   Law and Analysis

A state prisoner seeking a writ of habeas corpus has the ultimate burden to prove that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Additionally, the petitioner has the burden to show that any claim he presents meets all the jurisdictional and procedural requirements required to obtain merits review by the federal

habeas court.  *See*, *e.g.*, 28 U.S.C. § 2254(b) (exhaustion); 28 U.S.C. § 2244(d) (statute of limitations).

### A.      Ground One – Double Jeopardy and Due Process at Resentencing

#### 1.      The Parties' Arguments

In his Ground One claim, Payne argues that the state trial court's denial of his "motion to dismiss" and imposition of sentence for a previously merged offense on remand violated his rights against double jeopardy and to due process.  ECF Doc. 1 at 5-6; ECF Doc. 34 at 7-56.  In his traverse, Payne clarifies that he *does not* allege that his resentencing violated the multiple-punishments prong of the Constitution's protection against double jeopardy.  ECF Doc. 34 at 14-15.  Instead, Payne presents two theories for how the trial court's denial of his motion to dismiss and resentencing violated his double jeopardy rights.  ECF Doc. 34 at 15-43.  First, Payne contends that: (1) the state abandoned his illegal-manufacture and illegal-assembly-or-possession-of-chemicals counts when it elected to proceed to sentencing on the aggravated arson charge only; (2) the abandonment of those counts terminated the "initial jeopardy" for those offenses and created a bar to the state's subsequent pursuit of a conviction for them; and (3) the state's pursuit of conviction on the illegal-manufacture count at resentencing placed him in "second jeopardy" for the same offense.  ECF Doc. 34 at 27, 31-32, 34-35.  Second, Payne argues that: (1) the Ohio Court of Appeals effectively acquitted him of the illegal-manufacture when it determined that insufficient evidence existed to support the conclusion; (2) the double jeopardy clause collaterally estopped the state from pursuing (and the trial court from entering) an illegal-manufacture conviction when the Ohio Court of Appeals had entered such favorable disposition; and (3) the trial court's failure to preserve the Ohio Court of Appeals' favorable factual determination violated his double jeopardy rights.  ECF Doc. 34 at 28-30, 34, 36-43.

Additionally, Payne contends that his illegal-manufacture conviction violated his due process

rights because "a jury of his peers" did not find that he manufactured methamphetamine "'on the

day of the fire, [or] at some point prior to the fire', as the state now alleges in order to make a

finding that there was sufficient evidence to support the conviction."[5]  ECF Doc. 34 at 47-50.

Warden Sloan responds that Payne's Ground One claim is procedurally defaulted

because: (1) *res judicata* barred the claim when he failed to move for reconsideration of the Ohio

Court of Appeals' remand order or to appeal the remand order directly to the Ohio Supreme

Court during his first direct appeal; and (2) even if the claim was not *res judicata* barred after his

first appeal, he failed to raise the challenge in his second direct appeal after resentencing.  ECF

Doc. 12 at 32-35.  And Warden Sloan argues that Payne's procedural default cannot be excused

because: (1) he cannot show that some external factor caused his failure to challenge the remand

order in the Ohio Supreme Court during his first direct appeal; (2) he was not prejudiced by his

failure to raise the issue; and (3) his claim is not based on new evidence of actual innocence.

ECF Doc. 12 at 35-36.  Warden Sloan also argues that Payne's Ground One claim is meritless

because resentencing did not implicate double jeopardy when merger at his original sentencing

did not vacate his guilty verdicts and noncognizable insofar as Payne challenges the state courts'

interpretation of the Ohio merger statute.  ECF Doc. 12 at 36-40.

In responding to Warden Sloan's procedural default argument, Payne argues that his

double jeopardy/due process challenge to resentencing and the denial of his motion to dismiss

were not procedurally defaulted, because the Ohio Court of Appeals wrongly concluded that *res*

---

[5] Payne also argues that the state is judicially estopped from presenting on habeas review a new theory to support his illegal-manufacture conviction – *i.e.*, that his illegal manufacture was premised on a separate transaction than the other count – after the state had represented to the state courts that all of the offenses involved the same animus.  *See* ECF Doc. 34 at 43-47.  But it does not appear that Warden Sloan has actually made such an argument.  *See generally* ECF Doc. 12.

*judicata* barred them when he had failed to raise the issues in a motion for reconsideration or on appeal to the Ohio Supreme Court during his first direct appeal. ECF Doc. 34 at 9-12.  But Payne concedes that the issue was procedurally defaulted when he failed to raise it in his second direct appeal (from resentencing). ECF Doc. 34 at 12.  Nevertheless, Payne contends that the procedural default of his Ground One claim should be excused because appellate counsel was ineffective for failing to raise the double jeopardy claim on the second direct appeal despite having told him that she would raise it. ECF Doc. 1 at 6; ECF Doc. 34 at 12.  Further, Payne asserts that he raised the claim in his application to reopen and on his appeal to the Ohio Supreme Court from the denial of that application. ECF Doc. 1 at 6; ECF Doc. 34 at 12. Finally, he argues that the Ohio Court of Appeals' determination that he was not prejudiced by appellate counsel's failure to include in his second direct appeal the double jeopardy/due process challenge and the denial of his motion to dismiss was an unreasonable application of clearly established federal law. ECF Doc. 34 at 55.

### 2.    Procedural Default

#### a.    Procedural Default Standard

"[T]he procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d 821, 827 (6th Cir. 2019).  Federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To determine whether an Ohio procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test: (1) did

the petitioner fail to comply with an Ohio procedural rule?; (2) do Ohio courts regularly enforce that rule?; (3) is the rule an adequate and independent state ground for denying review of a constitutional claim?; and (4) can the petitioner show cause and prejudice excusing the default? *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see also Gerth*, 938 F.3d at 829-830 (holding that Ohio's *res judicata* doctrine is an adequate and independent state procedural ground that Ohio courts regularly apply).  If the last state court affirms the conviction both on the merits and alternatively on the procedural ground, the procedural default will be deemed invoked and federal habeas review on the merits will hinge on a showing of cause and prejudice.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."  *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and then proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### b.  Procedural Default Analysis

Payne has (correctly) conceded that his Ground One claim was procedurally defaulted when he failed to raise it on his second direct appeal.  *See* ECF Doc. 34 at 12.  Payne's concession here is correct because his failure to raise the claim in his second direct appeal resulted in a failure to fairly present the merits of his claim before the Ohio Court of Appeals and the Ohio Supreme Court.  *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; *Baston*, 282 F. Supp. 2d at 661; *Scott*, 209 F.3d at 865-68.

And, although Payne filed an App. R. 26(B) application seeking leave to raise his double jeopardy and due process challenges to the denial of his motion to dismiss and to his resentencing, that application presented the claim only through the lens of ineffective-assistance-of-counsel; and *its* denial precluded Payne from obtaining merits review of the underlying claim. *See Davie v. Mitchell*, 547 F.3d 297, 311-12 (6th Cir. 2008) (explaining that, because an ineffective-assistance claim is analytically different from an underlying claim, raising an ineffective-assistance claim in an App. R. 26(B) application to reopen does not fairly present the underlying claim for merits review); *accord Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011).  Thus, Payne's Ground One claim is procedurally defaulted.

Payne's argument – that "cause and prejudice" excuse his procedural default when his failure to raise the claim during his second direct appeal was the result of appellate counsel's ineffective assistance – is unavailing.  As discussed in the Ohio Court of Appeals' decision denying Payne's App. R. 26(B) application, appellate counsel was not ineffective for failing to raise Payne's double jeopardy and due process claims because those claims were barred under Ohio's *res judicata* rule.  ECF Doc. 12-1 at 374-80.  And counsel cannot be ineffective for failing to raise a claim barred by *res judicata*.  *See Raglin v. Mitchell*, No. 1:00-cv-767, 2013 U.S. Dist. LEXIS 141199, at *24 (S.D. Ohio, Sept. 29, 2013) ("Because [a claim] would have been barred from consideration [under Ohio's *res judicata* rule], it cannot have been ineffective assistance . . . for . . . counsel to have failed to raise it."  *Sheppard v. Robinson*, No. 1:00-cv-493, 2012 U.S. Dist. LEXIS 117060, at *6 (S.D. Ohio, Aug. 20, 2012)); *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Indeed, winnowing out weak claims that would not likely be heard falls within the strategic discretion that counsel is expected to exercise.  *See Jones*, 463 U.S. at 754; *Strickland*, 466 U.S. at 690; *Smith*, 477 U.S. at 536.  Thus, Payne has not pointed to

24

a factor outside his defense as "cause" sufficient to excuse his procedural default. *Coleman*, 501 U.S. at 750.

Finally, Payne cannot show that a manifest injustice would occur if the court did not hear his Ground One claim because his claim does not rely on new evidence of actual innocence. *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623.

Because Payne's Ground One claim is procedurally defaulted and Payne has not met his burden to show why his procedural default should be excused, I recommend that Payne's Ground One claim be DISMISSED as procedurally defaulted.

### 3. Merits

Even though Payne's Ground One claim is procedurally defaulted, this court may nevertheless consider the claim on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that federal courts may ignore a complicated procedural-bar issue when the merits are "easily resolvable against the habeas petitioner"). When analyzing the merits of a claim that the Ohio courts did not resolve on the merits, this court applies a *de novo* standard. *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004).

### a. Double Jeopardy

The Double Jeopardy Clause in the Fifth and Fourteenth Amendments protects against: (1) a second prosecution for the same offense after acquittal or conviction; and (2) multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994). Whether a conviction has occurred is a matter of state law. *Cf. Ramdass v. Angelone*, 530 U.S. 156, 160 (2000) (looking to Virginia law to determine whether a conviction occurred). In Ohio, a conviction occurs when: (1) the jury returns a verdict finding the defendant guilty; and (2) the court imposes sentence. *Smith v. Coleman*, 521 F. App'x 444, 449 (6th Cir. 2013) (citing *State v.*

*McGuire*, 80 Ohio St. 3d 390 (Ohio 1997)); *see also* ECF Doc. 12-1 at 98 (citing *State v. Henderson*, 58 Ohio St. 2d 171, 178 (Ohio 1979)).

An acquittal occurs for double jeopardy purposes only when one or more of the factual elements of a charged offense was actually resolved in the defendant's favor.  *See Yeager v. United States*, 557 U.S. 110, 119 (2009) ("[T]he Double Jeopardy Clause precludes the government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial"); *United States v. Scott*, 437 U.S. 82, 97 ("[A] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.").  Under Ohio law, a decision at sentencing that one offense merges with another offense is not a resolution of the merged offense in the defendant's favor, but instead leaves the guilty verdict for the merged offense intact.  *See State v. Whitfield*, 124 Ohio St. 3d 319, 325 (2010) ("[T]he determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing.  Thus, the trial court should not vacate or dismiss the guilt determination.").  This comports with the U.S. Supreme Court's statements that "[s]entencing decisions favorable to the defendant . . . cannot generally be analogized to an acquittal."  *Monge v. California*, 524 U.S. 721, 729 (1998)[6]; *accord Bullington v. Missouri*, 451 U.S. 430, 438 (1981) ("The Court generally has concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside.").

---

[6] The Supreme Court also stated that that double jeopardy is not usually implicated at the (non-capital) sentencing stage because sentencing determinations do not place a defendant in jeopardy of an offense.  *Monge*, 524 U.S. at 728.  Moreover, the Double Jeopardy Clause does not confer a right to know at any exact point in time the exact limits of a punishment, prevent the state from seeking review of a sentence, or restrict the length of a sentence imposed upon retrial after a defendant's successful appeal.  *Id.* at 730.

For double jeopardy purposes, an appellate court's vacatur of a conviction on the grounds that it was not supported by sufficient evidence has the effect as an acquittal for the challenged offense. *Monge*, 524 U.S. 721, 729 (1998); *Burks v. United States*, 473 U.S. 1, 18 (1978); *United States v. Stevens*, 177 F.3d 579, 586 (6th Cir. 1999). Conceivably, when the vacated offense cannot be distinguished from the remaining merged offenses or was vacated based on insufficient evidence to support an element that is also part of the remaining merged offenses, those merged offenses could also be considered vacated or acquitted. *Cf. Madsen v. McFaul*, 643 F. Supp. 962 (N.D. Ohio, Aug. 13, 2009) (double jeopardy precluded retrial for kidnapping – based solely upon Ohio law making kidnapping implicit in forcible rape – when the trial court had dismissed on double jeopardy grounds the rape charges upon which the alleged kidnapping was premised). But, when previously merged offenses can be distinguished from the vacated offense, the appellate court's decision to overturn the conviction does not act as an acquittal for the remaining, previously merged offenses. *See Taylor v. Haviland*, No. 3:16-cv-847, 2017 U.S. Dist. LEXIS 215394, at *5-7, 39-40 (N.D. Ohio, Dec. 21, 2017) (double jeopardy not violated when state appellate court held that the trial court improperly dismissed instead of merging aggravated robbery offense with felony murder offense, vacated the felony murder conviction for insufficient evidence, and remanded with instructions to reinstate and impose sentence for the aggravated robbery offense). *Cf. Hargrove v. Ohio Dep't of Rehab. & Corr.*, No. 1:08-cv-669, 2010 U. Dist. LEXIS 9276, at *10-11, 14-15 (S.D. Ohio, Feb. 2, 2010) (double jeopardy not violated when the petitioner was resentenced on a lesser-included offense after the appellate court found that the aggravating element in the greater offense was not supported by sufficient evidence); *accord Murphy v. Coleman*, No. 5:16-cv-2315, 2020 U.S. Dist. LEXIS 2184, at *11 (N.D. Ohio, Jan. 7, 2020).

Payne's Ground One double jeopardy claim is meritless.[7]  Because Payne expressly disavows that his claim is based on the multiple-punishments prong, he must show that he was subject to a subsequent prosecution for the same offense after conviction or acquittal.  ECF Doc. 34 at 14-15; *Schiro*, 510 U.S. at 229.  And, as Payne also acknowledges, because he was not *convicted* of the illegal-manufacture count until sentence was imposed at resentencing, he cannot show that he was subject to a subsequent prosecution *after conviction* for the illegal-manufacture count.  *Ramdass*, 530 U.S. at 160; *Smith*, 521 F. App'x at 449; ECF Doc. 12-1 at 98; *see* ECF Doc. 34 at 9-10, 27-28.  Thus, Payne's double-jeopardy argument depends on whether, at some point in a proceeding before his resentencing hearing, he was acquitted of the illegal-manufacture count.  *Schiro*, 510 U.S. at 229.

But Payne cannot show that he was subjected to a subsequent prosecution for the same offense after an acquittal.  *Schiro*, 510 U.S. at 229.  The merger of Payne's offenses at his original sentencing did not result in an acquittal or acquittal-equivalent because: (1) the jury verdict remained intact both before and after the offenses merged; and (2) the imposition of sentence for the aggravated arson count did not prohibit the imposition of any other sentence that might have been imposed after the original conviction was set aside.  *Whitfield*, 124 Ohio St. 3d at 325; *see also Monge*, 524 U.S. at 729; *Bullington*, 451 U.S. at 438.  Further, the Ohio Court of Appeals' holding that there was insufficient evidence to support his conviction for aggravated arson did not serve as an acquittal-equivalent for the illegal-manufacture count.  *See Taylor*, 2017 U.S. Dist. LEXIS 215394, at *5-7, 39-40.  In vacating Payne's aggravated arson conviction in his first direct appeal, the Ohio Court of Appeals never said, as Payne now claims, "that there

---

[7] Payne argues that this court should review his Ground One claim *de novo*, rather than applying the deferential AEDPA standard, because the Ohio Court of Appeals did not reach the merits of his claim. ECF Doc. 34 at 5-7, 14-15.  Luckily, we need not decide whether *de novo* review or the AEDPA standard applies.  Even if this court reviewed the claim *de novo*, it would fail for the reasons stated herein.

was no evidence [he] was 'manufacturing or complicit with the manufacture of drugs.'"
*Compare* ECF Doc. 34 at 25, 28, 40-41, *with* ECF Doc. 12-1 at 93-107.  Instead, the Ohio Court
of Appeals vacated Payne's aggravated arson conviction solely on the finding that the evidence
was insufficient to support even "a circumstantial inference that [Payne] was even complicit in
the fire's ignition."[8]  ECF Doc. 12-1 at 99.  And, because Payne's illegal-manufacture count was
not premised on whether he was complicit in the fire's ignition, the Ohio Court of Appeals'
holding in his first direct appeal was plainly *not* a factual determination resolving the illegal-
manufacture count or any element thereof in Payne's favor.  *See* ECF Doc. 12-1 at 7-8
(indictment); Ohio Rev. Code § 2925.04(A) (omitting from the elements of illegal-manufacture a
requirement that the state prove complicity in the ignition of a fire); *Yeager*, 557 U.S. at 119;
*Scott*, 437 U.S. at 97; *Taylor*, 2017 U.S. Dist. LEXIS 215394, at *5-7, 39-40.

Moreover, Payne's resentencing was not a second prosecution for illegal manufacture.
*Schiro*, 510 U.S. at 229.  A jury had already found him guilty of illegal manufacture beyond a
reasonable doubt.  ECF Doc. 12-1 at 12; ECF Doc. 12-2 at 480.  Payne was not re-indicted,
charged in a new information, or retried.  *Hargrove*, 2010 U.S. Dist. LEXIS 9276, at *14;
*Murphy*, 2020 U.S. Dist. LEXIS 2184, at *11.  Payne merely had his jury verdict accepted by the
court and sentence imposed at a later stage in the same proceeding – *i.e.*, *State v. Payne*,
Ashtabula Cty. Ct. Com. Pl. Case No. 2013-CR-0025.  *See Taylor*, 2017 U.S. Dist. LEXIS
215394, at *40 ("Petitioner was not convicted of aggravated robbery in a subsequent proceeding,

---

[8] The Ohio Court of Appeals actually took special care *not* to comment on the merits of Payne's illegal-
manufacture and illegal-assembly counts.  *See* ECF Doc. 12-1 at 101-02 (specifically declining to reach
those issues).  The closest that the court came to discussing the merits of those counts was in stating that
"[e]ven assuming the bottle was, at some point used for the production of methamphetamine, the evidence
did not suggest the bottle was ruptured or otherwise damaged in such a way to suggest it was instrumental
in causing the fire."  ECF Doc. 12-1 at 99.

but merely had his [erroneously dismissed rather than merged] jury [verdict] reinstated in the *same proceeding*." (emphasis in original)).

Because Payne cannot show that he was subjected to a second prosecution for the same offense after acquittal, his Ground One double jeopardy claim is meritless.  Accordingly, if the court declines to dismiss Payne's Ground One claim on the basis of procedural default, I recommend that Payne's Ground One double jeopardy claim be DISMISSED as meritless.

### b.      Due Process

Payne's Ground One due process claim is also meritless, if not frivolous.  As discussed above, Payne argues that his due process rights were violated at resentencing because a jury had not found that he had manufactured methamphetamine "if not on the day of the fire, at some point prior to the fire."  ECF Doc. 34 at 47.  He also asserts that the indictment did not give him adequate notice of that charge.  ECF Doc. 34 at 50.  The Due Process Clause, when viewed in combination with the Sixth Amendment right to an impartial jury, "requires that each element of a crime be proved to the jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 104 (2013).  And the jury must find each element of the offense beyond a reasonable doubt. *United States v. Soto*, 780 F.3d 689, 708 (6th Cir. 2015) (quoting *Alleyne*, 570 U.S. at 107); *United States v. Ledbetter*, 929 F.3d 338, 365 (6th Cir. 2019).  And, while the Due Process Clause does not require states to issue indictments, it does require that states give criminal defendants fair notice of the charges, described with some precession and certainty, to permit adequate preparation of a defense.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

A review of the record shows that Payne's indictment specifically alleged that "on or about" December 8, 2012, he had manufactured methamphetamine in violation of Ohio Rev. Code § 2925.04(A).  ECF Doc. 12-1 at 7-8.  And it alleged that December 8, 2012, was the day

of the fire.  ECF Doc. 12-1 at 7-8.  This indictment was sufficiently detailed to apprise Payne

that he was charged with having manufactured methamphetamine, as he says: "if not on the day

of the fire, at some point prior to the fire."  ECF Doc. 34 at 50; *Koontz*, 731 F.2d at 369.  And his

due process right to a jury-verdict was satisfied when the jury unanimously found that Payne was

guilty of manufacturing methamphetamine as alleged in the indictment.  ECF Doc. 12-1 at 12;

ECF Doc. 12-2 at 480; *Alleyne*, 570 U.S. at 104, 107; *Soto*, 780 F.3d at 708.  Thus, because the

indictment was sufficient and the jury unanimously found that Payne had manufactured

methamphetamine in violation of Ohio Rev. Code § 2925.04(A) as alleged in the indictment, his

conviction for the illegal-manufacture count at resentencing did not violate his due process

rights.  *Koontz*, 731 F.2d at 369; *Alleyne*, 570 U.S. at 104, 107; *Soto*, 780 F.3d at 708.  Thus,

Payne's Ground One due process claim is patently meritless.

       Accordingly, if the court declines to dismiss Payne's Ground One claim on the basis of

procedural default, I recommend that Payne's Ground One due process claim be DISMISSED as

meritless.

       **B.**     **Ground Two – Waiver of Counsel**

          **1.**     **Parties' Arguments**

       In his Ground Two claim, Payne argues that the trial court violated his constitutional

rights when it: (1) failed to fully investigate his allegations regarding the irreconcilable

difference that arose between him and appointed counsel at trial; and (2) failed to ensure that he

knowingly, intelligently, and voluntarily waived his right to counsel.  ECF Doc. 1 at 8-9; ECF

Doc. 34 at 62-64.  And, in his traverse, Payne argues that the Ohio Court of Appeals

unreasonably applied the holdings in *Von Mitlke v. Gilles*, 332 U.S 724 (1948), *Johnson v.*

*Zerbst*, 304 U.S. 458 (1938), and *Faretta v. California*, 422 U.S. 806 (1975), in deciding his waiver-of-counsel claim.  ECF Doc. 34 at 61.

Warden Sloan responds that Payne's Ground Two claim was procedurally defaulted when Payne failed to raise the claim on appeal to the Ohio Supreme Court after the Ohio Court of Appeals rejected the claim in his first direct appeal.  ECF Doc. 12 at 43.  And, although Payne raised the claim in his second appeal to the Ohio Court of Appeals and Ohio Supreme Court, *res judicata* barred him from obtaining merits review during his second appeal.  ECF Doc. 12 at 43-44.  Further, Warden Sloan argues that Payne's Ground Two claim is meritless because the Ohio Court of Appeals reasonably determined that: (1) the trial court adequately ensured that Payne's waiver of counsel was knowing, voluntary, and intelligent during the waiver-of-counsel colloquy; and (2) the trial court did not err in failing to consider whether to appoint new counsel when Payne did not ask for new counsel to be appointed and when Payne had expressed a desire to terminate counsel at such a late stage in the trial.  ECF Doc. 12 at 45-48.

In his traverse, Payne argues that his Ground Two claim was not procedurally defaulted because the Ohio Court of Appeals did not invoke *res judicata* as a bar to his claim and denied his claim on the merits.  ECF Doc. 34 at 56.  He also argues that, if his Ground Two claim was procedurally defaulted, his procedural default should be excused because appellate counsel was ineffective for raising a claim barred by *res judicata*, rather than some other meritorious claim. ECF Doc. 34 at 57.

### 2. Procedural Default

Payne's Ground Two claim is not procedurally defaulted.  Ordinarily, this court would look to the Ohio Supreme Court's June 2016 decision – the last decision before which Payne raised his Ground Two claim – to determine whether the state courts invoked a procedural bar to

the claim. *Coleman*, 501 U.S. at 729-30. Nevertheless, because the Ohio Supreme Court did not provide reasoning in its decision declining jurisdiction, this court must look through that order to the Ohio Court of Appeals' reasoned decision to determine whether the court applied a procedural bar. *Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007). Here, Warden Sloan is correct that the Ohio Court of Appeals *could have*, during Payne's second direct appeal, applied Ohio's *res judicata* rule to bar his waiver-of-counsel claim because he failed to raise the claim before the Ohio Supreme Court during his first direct appeal. *See State v. Simmons*, 2011-Ohio-2625, at ¶30 (Ohio App. Ct. 2011) ("Now, on appeal, appellant is limited to raising issues that arose at the resentencing hearing. Res judicata precludes him from raising any issues he raised, or could have raised, in his first direct appeal."); *see also Gerth*, 938 F.3d 821, 829-30 (holding that Ohio's *res judicata* rule is a regularly applied and independent state procedural grounds for denying review). But Payne correctly notes that the Ohio Court of Appeals instead recited the factual findings from his first appeal and stated that his "second assignment of error lacks merit." ECF Doc. 12-1 at 247. And, when the state appellate court determines that an issue is "without merit," the court has not invoked the procedural bar. *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003); *accord Harris v. Reed*, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").

Because the Ohio Court of Appeals and Ohio Supreme Court did not clearly invoke *res judicata* as a procedural bar to Payne's waiver-of-counsel claim, but instead decided the claim on the merits, this Court cannot conclude that Payne's Ground Two claim is procedurally defaulted.

*Frazier*, 343 F.3d at 791; *Harris*, 489 U.S. at 263.  Accordingly, the Court must proceed to consider Payne's Ground Two claim on the merits.

  **3.**  **Merits**

    **a.**  **AEDPA Standard for Merits Review**

  When reaching the merits of a claim that state courts reviewed on the merits, federal habeas courts apply a highly deferential reasonableness standard under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) ("highly deferential standard for evaluating state-court rulings").  Under the AEDPA standard, "state-court decisions [must] be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), and habeas relief is only available when the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  In short, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

### b. Analysis

In addition to guaranteeing the right to assistance of counsel, the Sixth and Fourteenth Amendments also guarantee a criminal defendant's right to assume self-representation if he does "not voluntarily accept representation by [appointed] counsel." *Faretta v. California*, 422 U.S. 806, 832-34 (1975). And, when the defendant can afford counsel, he has a limited right to choose his own attorney – tempered by the court's authority to control its docket and a recognition that a demand for counsel may be used to delay proceedings. *United States v. Green*, 388 F.3d 921, 921 (6th Cir. 2004); *see also Burton v. Renico*, 391 F.3d 764, 771-72 (6th Cir. 2004) ("[A] defendant has a right to a *fair opportunity* to secure counsel of his own choice."). But the right to choice of counsel "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Instead, an indigent defendant seeking new appointed counsel "must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

When a criminal defendant seeks to represent himself without counsel, the trial court must ensure that he knowingly, intelligently, and voluntarily waives his right to assistance of counsel. *Faretta*, 422 U.S. at 835. At the very least, the court should take steps to ensure that the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Thus, the Supreme Court has stated:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).  Further, "[e]ven when a defendant 'did not straightforwardly assert his right to self-representation, and even told the trial court twice that he did not wish to represent himself,'" the Sixth Circuit has held that a valid waiver of counsel resulted from the defendant's "'reject[ion of] of all of his options except self-representation.'" *Wilson v. Parker*, 515 F.3d 682, 695 (6th Cir. 2008).

The Sixth Circuit has held that an improper denial of a *federal* defendant's request to substitute appointed counsel for new appointed counsel could undermine the voluntariness of his waiver of counsel and decision to proceed *pro se*.  *See*, *e.g.*, *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011).  The Sixth Circuit has also indicated that a *federal* trial court must conduct some inquiry into the reasons for an indigent *federal* defendant's dissatisfaction with counsel when he timely and in good faith requests that new counsel be appointed.  *Iles*, 906 F.2d at 1130.  Nevertheless, a state trial court's failure to conduct the inquiry contemplated in *Iles* does not provide a basis for granting habeas relief because "*Iles* is not 'clearly established federal law as determined by the Supreme Court of the United States'" and "no Supreme Court precedent compel[s] such a hearing."  *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008).

Payne's Ground Two waiver-of-counsel claim is meritless.  Here, the Ohio Court of Appeals reasonably determined that the trial court had adequately ensured that Payne had knowingly, intelligently, and voluntarily decided to proceed *pro se* and was not required to conduct any further inquiry.  28 U.S.C. § 2254(d); *Bell*, 535 U.S. at 694; ECF Doc. 12-1 at 247.  A review of the record shows that the trial court went beyond compliance with *Faretta* and *Von Moltke* – and even the procedure laid out in *Iles* – when it: (1) convened a hearing without the jury to hear Payne's objections to appointed counsel; (2) advised Payne to not proceed without counsel; (3) gave Payne time to attempt to hire counsel after Payne

36

represented that he had sufficient funds; (4) advised Payne regarding the nature of his offenses and potential minimum and maximum penalties; (5) advised Payne to consult with his counsel about defenses; and (6) asked appointed counsel to remain as standby counsel in the event Payne had any legal, procedural, and evidentiary questions. *Faretta*, 422 U.S. at 835; *Von Moltke*, 332 U.S. at 724; *Iles*, 906 F.2d at 1130; ECF Doc. 12-1 at 103-07; ECF Doc. 12-2 at 316-35, 396-97. Further, the Ohio Court of Appeals reasonably determined that Payne's vague assertions – that trial counsel did not do "stuff" and was "not for [him]" despite his own belief that appointed counsel was "great attorney" – were not sufficient to trigger a need to conduct any further inquiry by the court. 28 U.S.C. § 2254(d); *Bell*, 535 U.S. at 694; ECF Doc. 12-1 at 103-07, 247; ECF Doc. 12-2 at 316-18. Moreover, even if *Iles* were a constitutional rule, Payne's vague assertions (especially when followed by his later request to resume appointed counsel's representation) were certainly not enough to show a conflict of interest, abandonment, lack of preparation, or irreconcilable breakdown in communication such that substitution of appointed counsel would have been warranted if sought. *See Iles*, 906 F.2d at 1130; ECF Doc. 12-1 at 103-07; ECF Doc. 12-2 at 316-18. Thus, this court cannot conclude that Payne's Sixth and Fourteenth Amendment right to counsel was violated when he waived his right to counsel.

Accordingly, I recommend that Payne's Ground Two claim be DISMISSED as meritless.

### C. Ground Three – Confrontation, Compulsory Process, and Defense

#### 1. Parties' Arguments

In his Ground Three claim, Payne argues that the state trial court violated his rights to due process, confrontation, use compulsory process, to present a defense, and to a fair trial under

the Fifth, Sixth, and Fourteenth Amendments when it denied his request to bring back certain witnesses – including Richard Loveridge – for additional cross-examination.  ECF Doc. 1 at 9-10.

Warden Sloan responds that Payne's Ground Three claim is procedurally defaulted because he failed to raise the claim as a substantive issue before the Ohio courts.  ECF Doc. 12 at 49-50.  Warden Sloan also argues that Payne cannot allege ineffective assistance of counsel excused his failure to raise the claim before the Ohio Supreme Court during his first direct appeal because he was not entitled to counsel before the Ohio Supreme Court.  ECF Doc. 12 at 50-51.  Further, Warden Sloan asserts that Payne cannot show that he was prejudiced by any alleged failure to raise the claim or that his claim relies on new evidence of actual innocence.  ECF Doc. 12 at 51.

In his traverse, Payne asserts that, although he procedurally defaulted the claim by failing to raise it during his direct appeals, ineffective assistance of appellate counsel excuses the default.  ECF Doc. 34 at 64-65.  Further, Payne argues that he fairly raised his ineffective-assistance argument in his App. R. 26(B) application to reopen his direct appeal.  ECF Doc. 34 at 64-66.

### 2.      Procedural Default

As Payne correctly concedes, his Ground Three claim was procedurally defaulted when he failed to raise it in his direct appeals.  ECF Doc. 34 at 63.  Because Payne's Ground Three claim was based on events that occurred during his trial and were part of the trial record, Payne could have raised the issue on direct appeal and Ohio's *res judicata* rule barred him from raising the claim for the first time in a collateral proceeding.  *See State v. Carter*, 2011-Ohio-6104, at ¶¶17-18 (Ohio App. Ct. 2011) (holding that *res judicata* barred a claim that the defendant could

38

have, but did not raise during his first appeal); *Simmons*, 2011-Ohio-2625, at ¶30 ("Now, on appeal, appellant is limited to raising issues that arose at the resentencing hearing.  Res judicata precludes him from raising any issues he raised, or could have raised, in his first direct appeal."); *see also Gerth*, 938 F.3d 821, 829-30 (holding that Ohio's *res judicata* rule is a regularly applied and independent state procedural grounds for denying review).  And Payne's unsuccessful App. R. 26(B) application to reopen his direct appeal precluded the Ohio Court of Appeals from reaching the merits of his claim.  *Davie v. Mitchell*, 547 F.3d 297, 313 (6th Cir. 2008) (An unsuccessful App. R. 26(B) application seeking to raise a previously omitted claim in a reopened appeal did not present the substantive claim for review on the merits.).

Payne also cannot overcome the procedural default of his Ground Three claim.  Payne's arguments that ineffective assistance of counsel excused his procedural default and that he had argued appellate counsel was ineffective for failing to raise his Ground Three claim in his App. R. 26(B) application to reopen are unavailing.  Because Payne procedurally defaulted his Ground three claim when he failed to raise it during his first direct appeal, excusing the default on ineffective assistance of appellate counsel grounds would require Payne to show that his first appellate counsel was constitutionally ineffective for failing to raise the claim.  *See*, *e.g.*, *Shank v. Mitchell*, 2008 U.S. Dist. LEXIS 83039, at *133 (S.D. Ohio Sept. 30, 2008) (reviewing whether a petitioner's *first appellate counsel*'s ineffective assistance excused the petitioner's procedural default).  To preserve such an argument, Payne would have needed to raise the ineffective-assistance argument in: (1) an appeal to the Ohio Supreme Court within 45 days after the Ohio Court of Appeals' September 30, 2014 decision (by November 14, 2014); or (2) in an App. R. 26(B) application to reopen his first direct appeal within 90 days after the September 30, 2014 decision (by December 29, 2014).  *See* Ohio S. Ct. Prac. R. 7.01(A)(1) (45-day deadline for

noncapital appeals); Ohio App. R. 26(B)(1) (90-day deadline for applications to reopen).  Payne did neither.  Instead, Payne waited until after his second direct appeal to file an App. R. 26(B), alleging that his *second* appellate counsel was ineffective for failing to raise the claim.[9]  ECF Doc. 12-1 at 300-09.  Thus, Payne procedurally defaulted his argument that first appellate counsel was ineffective for failing to raise his Ground Three claim, and he cannot use it as cause excusing the procedural default of his Ground Three claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-54 (2000) (holding that a procedurally defaulted ineffective-assistance claim cannot be used as "cause" to excuse another procedural default).

To the extent Payne alleges that *second* appellate counsel's ineffective assistance excuses the procedural default, his claim is likewise unavailing.  Second appellate counsel did not represent Payne when he failed to raise the claim during his first direct appeal, and *res judicata* barred the claim by the time second appellate counsel assumed representation.  *Carter*, 2011-Ohio-6104, at ¶¶17-18; *Simmons*, 2011-Ohio-2625, at ¶30.  Moreover, as the Ohio Court of Appeals noted, Payne's challenge to the trial court's denial of his requests to bring witnesses back for additional cross-examination was meritless because: (1) trial counsel had cross-examined each witness – including Loveridge – before Payne deiced to proceed *pro se*; and (2) Payne never articulated how additional cross-examination would have assisted his defense. *See* ECF Doc. 12-1 at 377-78.  And second appellate counsel could not have been ineffective for

---

[9] Payne's first appellate counsel and second appellate counsel were different attorneys.  *Compare* ECF Doc. 12-1 at 43, 84 (Attorney Hiener as first appellate counsel), *with* ECF Doc. 12-1 at 195 (Attorney French as second appellate counsel).  Payne's App. R. 26(B) application specifically alleges ineffective assistance with regard to his representation precipitating the Ohio Court of Appeals' March 28, 2016 decision. ECF Doc. 12-1 at 300.  And, although the Ohio Court of Appeals did not expressly state that it was not reviewing first appellate counsels' performance in ruling upon Payne's application, its use of the singular in stating that "appellate counsel was not ineffective for failing to raise the issue" demonstrates that it considered only whether one attorney – Payne's second appellate counsel – was ineffective.  *See* ECF Doc. 12-1 at 377-78.

failing to raise a meritless claim, let alone one that was *res judicata* barred.  *See Raglin*, 2013 U.S. Dist. LEXIS 141199, at *24; *Sheppard*, 2012 U.S. Dist. LEXIS 117060, at *6; *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.

Payne also cannot show that a manifest injustice would occur if the court did not hear his Ground Three claim, because his Ground Three claim – relying on video of the trial, which Payne says would show that he asked to bring a witness back for additional cross-examination – does not rely on new evidence of actual innocence.  *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *see also Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (indicating that an actual innocence claim is made *only* when the evidence *clearly* and *convincingly* establishes that no reasonable juror could have found the defendant guilty).  The video is not "new" because it was presented to the state trial court.  *See* ECF Doc. 12-1 at 185-86.  And the video is not clear and convincing evidence that the jury would not have convicted him absent any alleged error because Payne has not argued what Loveridge might have said during a second round of cross-examination, much less that such testimony would have precluded the jury from finding him guilty in light of the other evidence against him.  *Carter*, 443 F.3d at 538.

Accordingly, I recommend that Payne's Ground Three claim be DISMISSED as procedurally defaulted.

### 3.    Merits

Even though Payne's Ground Three claim is procedurally defaulted, the court may nevertheless choose to deny the claim on the merits.  *Lambrix*, 520 U.S. at 518.  As discussed above, when analyzing the merits of a claim that the Ohio courts did not resolve on the merits, this court applies a *de novo* standard.  *Burton*, 391 F.3d at 770.

"Whether rooted directly in the Due process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  Cross-examination and presenting relevant evidence are essential parts of that right.  *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (explaining that cross-examination is a fundamental requirement for a fair trial); *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (discussing the right to present evidence).  But these rights are not absolute and must "bow to accommodate other legitimate interests in the criminal trial process."  *Chambers*, 410 U.S. at 295; *Baze*, 371 F.3d at 323 (noting that states have the right to set rules for excluding and presenting evidence).  The Constitution does not guarantee unlimited cross-examination or cross-examination resulting in whatever testimony the defense might wish for.  *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original)).  "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  And this right is "generally satisfied when the defense is given a full and fair opportunity to probe and expose the infirmities [of a witness's testimony] through cross-examination."  *Fensterer*, 474 U.S. at 22.

Payne's argument that the trial court violated his constitutional rights by denying his request to recall Loveridge and other unidentified witnesses for repeated cross-examination is meritless.  Payne had the opportunity to cross-examine every witness at trial.  ECF Doc. 12-2 at

103-16, 119-42, 149-68, 172, 175-86, 189-91, 209-17, 219-20, 225-66, 272-96, 298-302, 312-16.

When he was represented by counsel, counsel conducted full cross-examinations of Loveridge, DeGeorge, Pristera, Paul, and Acurio.  ECF Doc. 12-2 at 103-16, 119-42, 149-68, 172, 175-86, 189-91, 209-17, 219-20, 225-66, 272-96.  Counsel partially cross-examined Detective Felt, and Payne picked up the remainder of cross-examination after Payne had voluntarily terminated representation by counsel.  ECF Doc. 12-2 at 298-302, 312-16, 338-78.  And, after the state rested its case, Payne – still representing himself – had the opportunity to call his own witnesses but declined to do so.  ECF Doc. 12-2 at 396-397, 407.  These opportunities satisfied Payne's confrontation right and right to present a complete defense.  *Fensterer*, 474 U.S. at 20.  And Supreme Court precedent indicates that the state trial court acted entirely within its authority to deny a request to conduct repetitive cross-examination after providing Payne a full opportunity to cross-examine the witnesses against him.  *Fensterer*, 474 U.S. at 20, 22; *Van Arsdall*, 475 U.S. at 679; ECF Doc. 12-2 at 330; *see also* ECF Doc. 12-1 at 377-78.

Moreover, because Payne as not shown that he suffered "actual prejudice" as a result of any alleged constitutional error, any error in denying his request to recall witnesses for a second round of cross-examination was harmless and does not entitle him to habeas relief.  *Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir., Apr. 7, 2020) (explaining that a Confrontation Clause violation is harmless when a habeas petitioner has not shown actual prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) ("actual prejudice" occurs when an error had a "substantial and injurious effect or influence in determining the jury's verdict").  Here, Payne has not shown that the denial of his request to recall witnesses for additional cross-examination prejudiced him because he has provided no argument or evidence as to what any witnesses might have said, much less any argument or evidence that the witnesses would have given testimony

that would have influenced the jury's verdict.[10]  *Brecht*, 507 U.S. at 637; ECF Doc. 1 at 10; *see also* ECF Doc. 12-1 at 378.

Accordingly, if the court declines to dismiss Payne's Ground Three claim as procedurally defaulted, I recommend that Payne's Ground Three claim be DISMISSED as meritless.

### D.     Ground Four – Omnibus Ineffective Assistance of Appellate Counsel

#### 1.     Parties' Arguments

Payne's Ground Six claim alleges that his appellate counsel was ineffective for failing to raise six different arguments on appeal: (1) that his due process and double jeopardy rights were violated when the trial court overruled his motion to dismiss on remand; (2) that his constitutional rights were violated when the trial court failed to inquire further into Payne's request to recall witnesses; (3) that his constitutional rights were violated when the trial court denied his request to recall Loveridge; (4) that his due process and double jeopardy rights were violated when the Ohio Court of Appeals issued its decision in his first appeal; (5) that his constitutional rights were violated when the trial court failed to inquire into the complete breakdown of communication and irreconcilable conflict between him and counsel; and (6) that trial counsel was ineffective for (a) not objecting to Detective Felt's opinion testimony, (b) not objecting to Vernotta Jimenez's assertion of the right to remain silent, (c) not objecting to the trial court's refusal to give the jury certain trial transcripts; (d) failing to ensure there was a developed record regarding the breakdown of communication between Payne and counsel, (e) failing to ensure Payne knowingly, voluntarily, and intelligently waived his right to counsel;

---

[10] Arguably, such undeveloped argumentation, unsupported by specific details or citations to evidence, could subject Payne's argument to summary dismissal.  *See Robertson v. Eppinger*, No. 17-4107, 2018 U.S. App. LEXIS 37203, at *4 (6th Cir., Mar. 27, 2018) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

(f) failing to assist Payne in filing a motion for new trial or a petition for post-conviction relief.
ECF Doc. 1 at 11-12.

Warden Sloan responds that Payne's Ground Four claim does not entitle him to relief because each sub-claim is either procedurally defaulted and/or meritless.  Specifically, Warden Sloan argues that sub-claims four and five procedurally defaulted because Payne failed to present the on appeal to the Ohio Supreme Court from the denial of his App. R. 26(B) application to reopen.  ECF Doc. 12 at 57-59.  Warden Sloan contends that sub-claim six is: (1) procedurally defaulted because the Ohio Court of Appeals, in denying his App. R. 26(B) claim, dismissed the argument for failure to provide sufficient detail to present the factual basis for it; and (2) meritless.  ECF Doc. 12 at 59-69.  And Warden Sloan asserts that sub-claims one through three are meritless because Payne has not shown that the Ohio Court of Appeals unreasonably determined that appellate counsel did not render deficient performance or prejudice him by not raising those claims.  ECF Doc. 12 at 52-57.

## 2.  Procedural Default

Warden Sloan is correct that Payne's Ground Four sub-claims four through six are procedurally defaulted.  Although Payne properly raised sub-claims four and five in his App. R. 26(B) application to reopen, he failed to fairly present those claims at each level of Ohio's ordinary review process when he did not raise those claims before the Ohio Supreme Court on appeal from the denial of his App. R. 26(B) application.  *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; *Baston*, 282 F. Supp. 2d at 661; *Scott*, 209 F.3d at 865-68; ECF Doc. 12-1 at 384-85.  Similarly, Payne failed to fairly present sub-claim six when he failed to raise the claim with sufficient specificity to apprise the Ohio Court of Appeals of its factual basis.  *See Wagner v. Smith*, 581 F.3d 410, 416 (6th Cir.

2010) (holding that a claim was not fairly presented when, as in this case, a petitioner raised an argument only in a heading without factual development or any degree of specificity regarding the factual basis for the claim); ECF Doc. 12-1 at 360-61 (heading only), 380 (Ohio Court of Appeals conclusion that Payne had not presented sufficient argument); *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; *Baston*, 282 F. Supp. 2d at 661; *Scott*, 209 F.3d at 865-68.

Payne has not presented any argument that cause and prejudice exists to excuse his procedural default on Ground Four sub-claims four through six.  *See* ECF Doc. 1; ECF Doc. 34. And, because Payne was not entitled to counsel during his App. R. 26(B) proceedings or appeal to the Ohio Supreme Court, is unlikely that Payne could point to some external factor that caused his failure to raise those claims.  *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) ("A Rule 26(B) application is a collateral challenge to which petitioners do not have the right to assistance of counsel.").  Payne did argue before the Ohio Supreme Court that he failed to provide sufficient argumentation supporting his Ground Four sub-claim six argument because the Ohio Court of Appeals would not extend the page limit for his App. R. 26(B) application.  ECF Doc. 12-1 at 400.  But, even if the court were to review this argument, it would not be sufficient to show cause excusing Payne's procedural default because Payne – and no other person – was responsible for conforming his argument to Ohio's page limit for App. R. 26(B) applications and Ohio App. R. 26(B)(4) does not provide any authority for extending page limits.  Moreover, Payne's Ground Four sub-claims four through six do not rely on new evidence of actual innocence, such that declining to hear those arguments would result in manifest injustice. *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623.

Accordingly, I recommend that Payne's Ground Four sub-claims four through six be DISMISSED as procedurally defaulted.

### 3.    Merits

Each sub-claim raised in Payne's Ground Four claim is also meritless.  The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 392 (1985).  In *Strickland v. Washington*, the U.S. Supreme Court established that a petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the *Sixth Amendment*; and (2) counsel's deficient performance prejudiced the defendant.  466 U.S. 668, 688 (1984).  This standard applies to claims that appellate counsel was constitutionally ineffective.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  To act as counsel guaranteed by the *Sixth Amendment*, appellate counsel need only exercise reasonable professional judgment, and is not obligated to raise every "colorable" claim on appeal.  *Jones*, 463 U.S. at 754; *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").  Further, counsel cannot be ineffective for failing to raise a meritless claim.  *Shaneberger*, 615 F.3d at 452; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (indicating that the task of winnowing out less persuasive arguments on appeal is the hallmark of an effective appellate advocate).  For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

### a.      Sub-Claim One – Motion to Dismiss on Remand

Because the Ohio Court of Appeals reviewed this argument in denying Payne's App. R. 26(B) application, we must review the claim under the highly deferential AEDPA standard.  28 U.S.C. § 2254(d).  Payne cannot show that the Ohio Court of Appeals' conclusion that appellate counsel was not ineffective for failing to challenge the trial court's denial of his motion to dismiss based on double jeopardy on remand was unreasonable under either prong of § 2254(d). Although the Ohio Court of Appeals did not expressly invoke the *Strickland* standard, it applied the same standard *Strickland* commands in reviewing Payne's ineffective-assistance claim.  ECF Doc. 12-1 at 375-76; *Strickland*, 466 U.S. at 688; *see also Slage v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006) (explaining that a state court does not have to cite Supreme Court cases, so long as the reasoning and result are consistent with Supreme Court precedent).  Further, the court reasonably determined that appellate counsel was not ineffective for failing to challenge the trial court's denial of his motion to dismiss because *res judicata* barred his double jeopardy claim, and counsel cannot be ineffective for failing to raise a procedurally barred claim.  ECF Doc. 12-1 at 375-76; *see Raglin*, 2013 U.S. Dist. LEXIS 141199, at *24; *Sheppard*, 2012 U.S. Dist. LEXIS 117060, at *6; *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Thus, Payne's Ground Four sub-claim one is meritless.

### b.      Sub-Claim Two and Three – Recalling Witnesses

The highly deferential AEDPA standard also applies to Payne's Ground Four sub-claims two and three because the Ohio Court of Appeals reviewed the claims on the merits in denying Payne's App. R. 26(B) application.  28 U.S.C. § 2254(d).  Sub-claim two is also meritless because Payne has not shown that the Ohio Court of Appeals' decision unreasonably applied Supreme Court precedent or made an unreasonable determination of the facts.  28 U.S.C.

48

§ 2254(d).  The Ohio Court of Appeals applied substantially the same standard as required under *Strickland* when it reviewed Payne's argument.  ECF Doc. 12-1 at 375-76; *Strickland*, 466 U.S. at 688; *Slage*, 457 F.3d at 513.  And the Ohio Court of Appeals reasonably determined that Payne could not show that appellate counsel was ineffective for failing to challenge the denial of Payne's request to recall witnesses for additional cross-examination, because Payne already had the opportunity to cross-examine those witnesses and Payne failed to show prejudice by not explaining what he expected recalled witnesses to say.  ECF Doc. 12-1 at 375-78; *Strickland*, 466 U.S. at 688, 694.  Payne also has not explained how any anticipated testimony might have persuaded the jury disregard all the other evidence against him and render a verdict in his favor. *Strickland*, 466 U.S. at 694; *see* ECF Doc. 12-1 at 378.  Thus, Payne's Ground Four sub-claims two and three are meritless.

### c.  Sub-Claim Four – Double Jeopardy

Again, because the Ohio Court of Appeals addressed Payne's Ground Four sub-claim four argument on the merits, the highly deferential AEDPA standard controls our analysis.  28 U.S.C. § 2254(d).  Here, Payne's argument that his second appellate counsel was ineffective for failing to raise a double jeopardy claim fails for the same reason his sub-claim one argument fails: the Ohio Court of Appeals reasonably determined that counsel could not have rendered constitutionally ineffective assistance because Ohio's *res judicata* rule barred Payne's double jeopardy challenge.  ECF Doc. 12-1 at 375-76; *see Raglin*, 2013 U.S. Dist. LEXIS 141199, at *24; *Sheppard*, 2012 U.S. Dist. LEXIS 117060, at *6; *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Moreover, to the extent Payne's argument could be construed to assert that his *first* appellate counsel was ineffective for failing to raise a double jeopardy challenge to the order remanding his case for re-sentencing, his claim would fail because, as discussed in

Section IV.A.3. above, remanding a case for re-sentencing does not violate the Double Jeopardy Clause.  *Schiro*, 510 U.S. at 229; *Ramdass*, 530 U.S. at 160; *Smith*, 521 F. App'x at 449; *Taylor*, 2017 U.S. Dist. LEXIS 215394, at *40.  And counsel cannot be ineffective for failing to raise a meritless claim.  *Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Thus, Payne's Ground Four sub-claim four argument is meritless.

> ### d.    Sub-Claim Five – Trial Court's Inquiry into the Breakdown of Representation

Payne's Ground Four sub-claim five is plainly meritless, regardless of whether this court were to apply the AEDPA standard or review the argument *de novo*.  Both of Payne's appellate attorneys raised claims challenging the trial court's handling of Payne's concerns about his trial counsel.  ECF Doc. 12-1 at 12-1 at 44-57, 196-97, 201-08.  And counsel cannot be ineffective for failing to raise a claim that counsel actually raised.[11]  *See Jones v. Bradshaw*, No. 1:03-cv-1192, 2015 U.S. Dist. LEXIS 177810, at *29 (N.D. Ohio, Oct. 30, 2015) (counsel not ineffective for failing to raise a claim that counsel had actually raised).  Moreover, the Ohio Court of Appeals reasonably determined that Payne's second appellate counsel could not have been ineffective even if she had failed to raise the claim because Ohio's *res judicata* rule barred the claim after it had been decided during Payne's first appeal.  ECF Doc. 12-1 at 379; *see Raglin*, 2013 U.S. Dist. LEXIS 141199, at *24; *Sheppard*, 2012 U.S. Dist. LEXIS 117060, at *6; *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Thus, Payne's Ground Four sub-claim five is meritless.

> ### e.    Sub-Claim Six – Ineffective Assistance of Trial Counsel

Payne's Ground Four sub-claim six is also meritless.  As an initial matter, Payne's Ground Four sub-claim six arguments are waived because Payne has not sufficiently developed

---

[11] When counsel *did* raise the claim that a petitioner argues should have been raised, the petitioner *cannot possibly* demonstrate prejudice by showing that there would have been any result *other than the result that he had actually obtained.  See Strickland*, 466 U.S. at 694 (explaining the prejudice prong).

each of the underlying ineffective-assistance-of-trial-counsel arguments with any explanation of why *trial counsel*'s performance was deficient or prejudiced him.  *See Frazier v. Jenkins*, 770 F.3d 485, 501 n.9 (6th Cir. 2014) (cursory or perfunctory arguments, unaccompanied by any effort at developed argumentation, are deemed waived).  This result makes sense.  But even we were to consider Payne's arguments, his failure to explain how he believes trial counsel's performance was deficient or prejudiced him precludes us from finding any merit in Payne's underlying ineffective-assistance-of-trial-counsel claims.  *See Strickland*, 466 U.S. at 688, 690, 694; *see also Stallings v. Bagley*, 561 F. Supp. 2d 821, 888 (N.D. Ohio, Mar. 31, 2008) (explaining that, when no prejudice resulted from *trial counsel*'s alleged failures, appellate counsel cannot have been ineffective for failing to raise an ineffective-assistance-of-trial-counsel clam).  At the very least, Payne has failed to carry his burden to show that his underlying ineffective-assistance-of-trial-counsel claims had any merit.  *Strickland*, 466 U.S. at 688, 690, 694.  And appellate counsel cannot be ineffective for failing to raise a meritless claim.  *Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Thus, Payne's Ground Four sub-claim six is meritless.

### f.      Ground Four Merits Conclusion

I recommend that Payne's Ground Four sub-claims one through three be DISMISSED as meritless.  Further, if the court declines to dismiss Payne's Ground Four sub-claims four through six as procedurally defaulted, I recommend that those claims also be DISMISSED as meritless.

### E.      Ground Five – Ineffective Assistance in Correcting the Record on Appeal

#### 1.      Parties' Arguments

In his Ground Five claim, Payne argues that he was denied effective assistance of appellate counsel when his second appellate counsel failed to assist him in having the record

corrected on appeal.  ECF Doc. 1 at 14.  Payne asserts that, during his resentencing proceedings, the trial court told him that he would have to file specifics regarding the alleged record omission with the Ohio Court of Appeals, but his counsel on appeal from resentencing "never followed through on her promise to get the record corrected." ECF Doc. 1 at 14.

Warden Sloan responds that Payne's Ground Five claim is procedurally defaulted because Payne never fairly presented his claim to the Ohio courts, and specifically did not raise the claim before the Ohio Court of Appeals in his App. R. 26(B) application to reopen.  ECF Doc. 12 at 69-70.  Further, Warden Sloan argues that Payne cannot overcome his procedural default by showing cause and prejudice because he was not entitled to counsel in his App. R. 26(B) proceedings, and his claim does not rely on new evidence of actual innocence.  ECF Doc. 12 at 70-72.  Warden Sloan also contends that Payne's Ground Five claim is meritless and/or noncognizable.  ECF Doc. 12 at 72-73.

In his traverse, Payne argues that this issue is not procedurally defaulted because he raised it in his App. R. 26(B) application to reopen his direct appeal, but the Ohio Court of Appeals ignored it.  ECF Doc. 34 at 69-70 (citing ECF Doc. 12-1 at 300 (PageID# 433) (original application)).  Payne asserts that he did not include the argument in his "assignment of errors" section of his App. R. 26(B) application, however, because "[a]ppellate counsel could not have raised [her] own ineffectiveness as an assignment of error." ECF Doc. 34 at 70.

## 2.    Procedural Default

Payne correctly states that he raised his argument – that his second appellate counsel was ineffective for failing to help him prepare and file his motion to correct the record on appeal – in both his App. R. 26(B) application to reopen and in his appeal to the Ohio Supreme Court from the denial of that application.  *See* ECF Doc. 12-1 at 300-01, 353-54, 384-85, 389-400.  Although

Payne did not include this part of his argument under the "Assignments of Error" heading in his application, Warden Sloan has not pointed to any Ohio procedural rule requiring *pro se* defendants to follow a strict form in drafting an application to reopen and App. R. 26(B) does not appear to include any formalistic drafting requirements that would preclude the Ohio Court of Appeals from reaching the merits of Payne's argument.  ECF Doc. 12 at 69-72; Ohio App. R. 26(B); *Maupin*, 785 F.2d at 138; *Williams*, 260 F.3d at 693.  Further, Ohio's policy of liberally construing *pro se* filings, *see State ex rel. Neil v. French*, 153 Ohio St. 3d 271, 273-74 (Ohio 2018), suggests that such a rule – if one exists at all – is not regularly applied to *pro se* filings. *Maupin*, 785 F.2d at 138; *Williams*, 260 F.3d at 693.  Thus, Payne's Ground Five claim is not procedurally defaulted, and the court should proceed to consider Payne's claim on the merits.

### 3.    Merits

Because the Ohio courts did not address Payne's Ground Five ineffective-assistance-of-appellate counsel claim, the court should apply a *de novo* standard.[12]  *Burton*, 391 F.3d at 770. Payne's Ground Five claim is nevertheless meritless.  The record shows that Payne was aware of the alleged deficiency in the trial transcript during his first appeal to the Ohio Court of Appeals – he filed a *pro se* motion to modify or correct the record, which the Ohio Court of Appeals rejected because he was represented by counsel at the time.  Because he was aware of his argument and Ohio law had a procedure through which he could raise it (an App. R. 9(C) motion filed by his first appellate counsel), Payne's second appellate counsel could have reasonably concluded that Ohio's *res judicata* rule would have precluded him from raising the argument in his second direct appeal.  *Strickland*, 466 U.S. at 688, 690; *see also Raglin*, 2013 U.S. Dist.

---

[12] The record shows that the Ohio Court of Appeals addressed Payne's App. R. 9(C) motion, but it did not specifically address Payne's argument that counsel was ineffective for failing to help him prepare his App. R. 9(C) motion.  ECF Doc. 12-1 at 373-80.

LEXIS 141199, at *24; *Sheppard*, 2012 U.S. Dist. LEXIS 117060, at *6; *accord Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  Payne's second appellate counsel also could have reasonably concluded that a motion to modify or correct the record would have been fruitless when Ohio law directs that the *trial court* settle and approve modifications to the record and the trial court had already issued an order stating that it had reviewed the recording of the trial and found no omissions from the transcript.[13]  *See* App. R. 9(C)(1) ("The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval."); ECF Doc. 12-1 at 185-86; *Shaneberger*, 615 F.3d at 452; *Smith*, 477 U.S. at 536.  And winnowing out weak arguments is precisely the kind of strategic decision appellate counsel is expected to make.  *Jones*, 463 U.S. at 754; *Strickland*, 466 U.S. at 690; *Smith*, 477 U.S. at 536.  Moreover, even if we were to court assume the alleged omission from the trial transcript actually occurred, Payne has not shown that the outcome of his case would have been any different had his second appellate counsel successfully assisted him in filing a motion to modify the record when: (1) the Ohio Court of Appeals reasonably concluded on other grounds

---

[13] Despite dedicating a significant portion of his motion practice throughout this case to the video recordings of his trial, *see generally* CM/ECF for N.D. Ohio Case No. 18-cv-302, review of those recordings is not actually necessary here.  As discussed above, that the trial court's review of the recordings and finding they demonstrated no omission from the trial transcript, is sufficient for this court to find that counsel could have made a sound strategic decision not to pursue modification of the record on appeal.  Further, Payne has *not* raised a claim challenging the trial court's finding that there was no omission from the record or nor has he specifically challenged the Ohio Court of Appeals denial of his App. R. 9(C) motion.  *See generally* ECF Doc. 1.  Even had Payne raised such a claim, it would not be cognizable on federal habeas review when, as discussed above, Payne has not shown that he was prejudiced by any alleged omission.  *See Herron v. Kelly*, No. 1:10-cv-1783, 2013 U.S. Dist. LEXIS 89754, at *34-36 (N.D. Ohio, Jun. 26, 2013) (collecting cases for the proposition that omissions from a trial transcript, absent a showing of prejudice, do not present a cognizable federal habeas claim); *see also* ECF Doc. 12-1 at 329 (statement of evidence asserting that the only omission from the transcript was a two-sentence exchange that Payne believes should have appeared on page 379 of the transcript, in which Payne said, "Will you please bring back Richard Loveridge, so I can cross examine him?" and the court said, "No."); ECF Doc. 12-1 at 376-78 (explaining that Payne did not show prejudice when he did not allege what witnesses might have said if he had been able to call them for additional cross-examination); Section IV.C.3., above.

that Payne's second appellate counsel was not ineffective for failing to challenge the trial court's refusal of his request to bring back witnesses (Section IV.D.3.b., *supra*); and (2) the denial of his request to recall witnesses for additional cross-examination did not violate his constitutional rights to confrontation and to present a complete defense (Section IV.C.3., *supra*).  Thus, Payne cannot show that he was prejudiced by counsel's failure to help him prepare and file his motion to modify the record on appeal.  *Strickland*, 466 U.S. at 694.  Simply put, Payne has not carried his burden to meet either *Strickland* prong to show that his second appellate counsel rendered constitutionally ineffective assistance.

Accordingly, I recommend that Payne's Ground Five claim be DISMISSED as meritless.

## V.       Certificate of Appealability

### A.       Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of 28 U.S.C. § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)."  Rule 11(a).   In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *See, Cunningham v. Shoop,* 817 F. App'x 223, 225 (6th Cir. Aug 24, 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis,* 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 327, 336 (2003)); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484.

### B.    Analysis

If the Court accepts my recommendations, Payne will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Payne's Grounds One and Three claims are procedurally defaulted and meritless.  His Grounds Two and Five claims are meritless. And his Ground Four claim is procedurally defaulted in part (sub-claims four through six), and meritless.

Because jurists of reason would not find debatable that habeas relief is not available for any of the claims raised in Payne's petition, I recommend that no certificate of appealability issue in this case.

## VI.     Recommendations

Because all of Payne's claims are procedurally defaulted and/or meritless, I recommend

that all of Payne's claims be DISMISSED and that his petition for writ of habeas corpus be

DENIED.  I further recommend that Payne not be granted a certificate of appealability.

Dated: November 23, 2020

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  See
*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985),
reh'g denied, 474 U.S. 1111 (1986).